586 A.2d 924

Anthony S. WILLIAMS, Appellant,

v.

OFFICE OF the PUBLIC DEFENDER COUNTY OF LEHIGH, F.E. Charles, Esq. & Chief Public Defender, Michael E. Brunnabend, Esq., Aaron Matte, Esq., Dennis G. Charles, Esq., Robert J. Magee, Esq., E.R. Eidelman, Esq. and the Attorney General Office of Pennsylvania, Mr. Leroy Zimmerman.

Superior Court of Pennsylvania.

Submitted Aug. 20, 1990.

Filed Dec. 18, 1990.

Reargument Denied March 4, 1991.

Anthony S. Williams, pro se.

Thomas M. Caffrey, Allentown, for Office of the Public Defender, appellees.

Robert J. Magee, Allentown, pro se.

Calvin R. Koons, Deputy Atty. Gen., Harrisburg, for Atty. Gen. Office, appellees.

Before ROWLEY, MONTGOMERY and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from a February 19, 1990 order granting appellees' preliminary objections and dismissing appellant's action for damages sustained as a result of appellees' alleged negligent representation of him in a criminal action. Appellant argues that the trial court erred in granting appellees' preliminary objections because appellees were properly served, and appellees are not entitled to local government agency immunity. We agree and, accordingly, we vacate the trial court's order and remand for proceedings consistent with this Opinion.

Appellant, who is incarcerated and proceeding *pro se*, filed a legal malpractice complaint against the Public Defender's Office of Lehigh County on June 1, 1987.[1] In his complaint, appellant alleged that the above-mentioned parties had acted negligently in their representation of him in the criminal case which resulted in his incarceration. On November 30, 1989, in response to appellant's complaint, appellees filed preliminary objections averring that they had not been properly served, and that appellant had failed to state a cause of action. The court below agreed that appellees had not been properly served, and also held that appellees were entitled to immunity from appellant's suit under the Political Subdivision Tort Claims Act (the "Act").[2] On February 20, 1990, the court entered its order granting appellees' preliminary objections and dismissing appellant's cause of action. This timely appeal followed.

1. Appellant's complaint also named as parties the Attorney General of the Commonwealth of Pennsylvania and private court-appointed counsel, Robert Magee, Esq. The trial court granted the Attorney General's preliminary objections on November 11, 1989, on the ground that appellant had failed to state a cause of action. Appellant does not appeal from the November 11 order. Moreover, although he names Magee as a party to this appeal, the record shows that Magee was properly served, *see* Sheriff's Return of Service, June 5, 1987, and there is no evidence that Magee was a party to the order appealed from here. Therefore, we need only concern ourselves with the status of the Public Defender's Office and the individual defenders themselves.

2. 42 Pa.C.S.A. § 8541 et seq.

Appellant first argues that the trial court erred in holding that he failed to properly serve appellees. Specifically, appellant argues that service of his complaint upon the secretary of the Public Defender's Office constituted adequate service upon the individual members of that office named in the complaint. We agree.

Pa.R.C.P. 402(a)(2)(iii) provides that:

(a) Original process may be served

(2) by handing a copy ...

(iii) at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof.

*Id.* Rule 402(a)(2)(iii) is a recodification of prior Rule 1009(b)(2)(iii) which was rescinded on June 20, 1985 (effective January 1, 1986). *See* Disposition Table, *reprinted preceding* Pa. R.C.P. 400. In interpreting prior Rule 1009(b)(2)(iii), we have noted that:

When Rule 1009(b)(2)(iii) refers to an office or place of business "of the defendant," it requires that the defendant have more proprietary responsibility and control over the business than that possessed by the average employee.

*Martin v. Gerner,* 332 Pa.Super. 507, 516, 481 A.2d 903, 908 (1984). The purpose of the Rule is "to assure that the defendant will actually get knowledge of the commencement of the action against him and of his duty to defend...." *Cohen v. International Org'n Masters, et al.,* 247 Pa.Super. 83, 87, 371 A.2d 1337, 1339-40 (1977). We have carefully reviewed the Explanatory Comment which precedes Rule 402, and find no evidence that its purpose is different from that of Rule 1009. Finally, we note that, in determining whether a defendant possesses sufficient proprietary interest or control over the place at which service was made, cases interpreting Rule 1009 consistently looked to the totality of the circumstances surrounding the defendant's contact with the place of service. *See Martin, supra; Cohen, supra* (defendant Secretary–Treasurer of union did not possess sufficient control over operation of

Pennsylvania branch of union for service upon union office to be effective as to him) (citations omitted); *see also Pincus v. Mutual Assur. Co.*, 457 Pa. 94, 321 A.2d 906 (1974) (trustee of corporation possessed requisite proprietary interest for effective service at corporate office); *Sharp v. Valley Forge Med'l Center*, 422 Pa. 124, 221 A.2d 185 (1966) (though defendant doctor had office at hospital where service attempted, he did not possess adequate interest as he worked in intern capacity and did not know of action until judgment entered against him); *Branch v. Foort*, 397 Pa. 99, 152 A.2d 703 (1959) (defendant maintenance employee did not possess sufficient proprietary or management interest in business for effective service); *Slater v. Goldberg*, 266 Pa.Super. 52, 402 A.2d 1073 (1979) (defendants had sufficient minimum contacts to allow effective service where corporate office wholly owned by them).

■ Here, the defendants whom appellant sought to serve (appellees) are all members of the Public Defender's Office of Lehigh County. The work product of that office is directly produced by its attorneys. Thus, unlike the defendants in *Cohen, Sharp* and *Branch*, who were held not to have sufficient proprietary interest and control over the business to have been effectively served, it appears that appellees here were regularly present at the office where service was made, and formed an integral part of its functioning and management. Furthermore, this case is distinguishable from those cases because of the unique nature of the office in question. Appellees possess a high degree of legal knowledge and sophistication; they are members of an office that handles legal documents such as notices of service on a regular basis. Finally, the record reveals that service was made upon the secretary of their office, and that defendants responded to appellant's complaint before judgment could be entered against them for failure to reply. *See* Sheriff's Return of Service, June 5, 1987; Defendants' Preliminary Objections, November 30, 1989. Thus, there can be no question that they actually received notice of the action pending against them. In light of the totality of the

circumstances, we conclude that service in this case was adequate, and the court's order is not affirmable based on inadequate service.

Appellant's second argument is that the trial court erred in determining that the Public Defender's Office of Lehigh County is entitled to immunity under the Political Subdivision Tort Claims Act. We agree.

The concept of immunity originally was a judicial creation, and gradually was expanded to encompass the judiciary, and both high and low level governmental officials. *See generally Ayala v. Phila. Bd. of Pub. Educ.*, 453 Pa. 584, 588–92, 305 A.2d 877, 879–81 (1973). The rationale for immunity was obvious. If a person in public office or service was required to answer in tort for routine acts performed in the public interest, he or she might be deterred from the performance of those duties. *Cf. Ferri v. Ackerman*, 444 U.S. 193, 203–04, 100 S.Ct. 402, 408–09, 62 L.Ed.2d 355 (1979). ("The point of immunity for such officials is to forestall an atmosphere of intimidation that would conflict with their resolve to perform their designated functions in a principled fashion.") (construing federal law). Over the years, however, the concept was overexpanded, and came under increasing criticism. Finally, in *Mayle v. Pennsylvania Dept. of Highways*, 479 Pa. 384, 388 A.2d 709 (1978), our Supreme Court abrogated the common law doctrine of immunity altogether. Then, in 1978, our Legislature promulgated 53 P.S. 5311.101 et seq., a narrower statutory form of immunity. The present Act, 42 Pa.C.S.A. §§ 8541 *et seq.*, is directly derived from that section,[3] and provides as follows:

**Governmental Immunity Generally**

Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

---

**3.** *See* Disposition Table preceding Title 42, Judiciary and Judicial Procedure, Pennsylvania Consolidated Statutes Annotated.

42 Pa.C.S.A. § 8541. Our research reveals no cases, and the parties have cited none, concerning whether Public Defenders are entitled to *statutory* sovereign immunity under either of the Acts. We note, however, that the issue of their immunity under common law was addressed by our Supreme Court in *Reese v. Danforth*, 486 Pa. 479, 406 A.2d 735 (1979). That case is instructive here.

The lead opinion in *Reese*, authored by JUSTICE (now CHIEF JUSTICE) NIX,[4] opined that:

> In order to be public officers, [the Public Defenders] would have to occupy public offices.... In *Finley v. McNair*, 317 Pa. 278, 281, 176 A. 10, 11 (1935), we said that [T]he question of whether an individual is a public officer
>
> ... . must be determined by a consideration of the nature of the service to be performed by the [office-holder], and of the duties imposed upon him and whenever it appears that those duties are of a grave and important character, involving in the proper performance of them some of the functions of government, the officer charged with them is clearly to be regarded as a public one....

*Id.* 486 Pa. at 483, 406 A.2d at 738. With regard to the specific issue of the status of public defenders, Justice Nix noted that:

> In comparing the office of the public defender to that of county solicitor, it is apparent that the public defender's function is more akin to the role of the privately employed attorney.... This is because the defender's

4. *Reese* was argued to six Justices. Justice Nix's lead opinion was not joined in its entirety by any Justice. Justice Roberts wrote a concurring opinion which was joined by Justice Larsen, emphasizing that, in his view, existing caselaw prohibited granting judicial immunity to public defenders. Justice Manderino joined in the opinion, except to the extent it relied on *Lennox v. Clark*, 372 Pa. 355, 93 A.2d 834 (1953), for the proposition that the District Attorney's duty to the sovereign is different than that of the Public Defender. Justice O'Brien dissented and was joined by then-Chief Justice Eagen.

duty is to represent his clients even as against the interests of the county....

\* \* \* \* \* \*

The relationship between the county and the public defender is similar to that between an independent contractor and the party contracting for his services. The County has no control over the manner of representation given indigents by the defender. The nature of the work involves the attorney-client relationship and is of a type that precludes outside interference or direction by the county....

[O]nce the appointment of a public defender ... is made, his public or state function ceases and thereafter he functions purely as a private attorney.... His professional relationship with his client takes on all the obligations and protections attendant upon a private attorney-client relationship except one: the public pays his fee. In this respect, he is like that physician rendering professional services which are paid for out of public funds and, like that physician, he ought to be subject to liability for tortious conduct.

*Id.*, 486 Pa. at 484–86, 406 A.2d at 738–39. Justice Nix concluded that:

[The public defenders] do not serve as public administrators with policy-making functions and the duty to act according to directives handed down to them by other public officials....

[W]e can conceive of no principled basis for differentiating between public defenders and privately retained and paid counsel whose clients are afforded ... the civil action in damages.

*Id.*, 486 Pa. at 487–89, 406 A.2d at 740 (citations omitted).[5] *See also Ei Bon EE Baya Ghananee v. Black*, 350 Pa.Super. 134, 504 A.2d 281 (1986) (private counsel appointed by

5. We note that, shortly after *Reese* was decided, the Supreme Court of the United States held that appointed counsel in *federal* criminal cases are not entitled to immunity against state malpractice suits. *See Ferri v. Ackerman*, 444 U.S. 193, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979). The analysis in *Ferri*, like the analysis in *Reese*, focused on the similarities

court to represent indigent defendant not entitled to immunity for negligent representation).

We recognize that *Reese* did not involve statutory immunity, and that Chief Justice Nix's lead opinion did not command a majority of the court. Nevertheless, we see nothing either in the immunity statute or in policy that would give us reason to question the fundamental soundness of the principles which animated that decision. There is no question that public defenders are not explicitly granted immunity under the statute. Instead, they are immune only if they fit into the rubric of a "local agency." The question then, as in *Reese*, becomes whether they are public officials of some kind; on this point, Chief Justice Nix's analysis of the public defender's function in *Reese* is controlling. The mere fact that "each county is mandated to maintain a public defender's office" by 16 Pa.S.A. § 9960.3 in no way changes the essentially private nature of the defender's duty to his or her clients. Appellees have not attempted to distinguish *Reese*, nor have they cited any authority that would indicate that the purpose of the public defender has changed in the past eleven years so as to call into question the reasoning underlying *Reese*. Therefore, in accordance with the principles articulated in the lead opinion in *Reese*, appellees are not entitled to immunity under the Act for the harm appellant alleges they caused him.

For the foregoing reasons, we hold that the trial court erred in granting appellees' preliminary objections on the grounds that appellees were not properly served and were immune from liability. Accordingly, we vacate the order of the court below, and remand for proceedings consistent with this Opinion.

Order vacated. Case remanded. Jurisdiction relinquished.

between appointed counsel and privately retained counsel. *See* 444 U.S. at 204–05, 100 S.Ct. at 409–10.